TOMÁS QUIÑONES ROSA ET AL., Complainants and Appellees, *v.* FAJARDO DEVELOPMENT COMPANY, ETC., now C. BREWER PUERTO RICO, INC., Defendant and Appellant.

No. R-63-273.    Decided June 23, 1964.

*Sifre & Ruiz Suria* and *Baltasar Corrada del Río* for appellant. *Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Claimants worked for predecessor firms of defendant C. Brewer Puerto Rico, Inc., since early in January 1943 until late in March 1957.[1] They participated in a phase of the transportation of the sugar processed in defendant's mills. They worked on the pier in different tasks relating to the shipping of the sugar.[2] They performed daily work in excess of eight hours in a 24-hour period. Defendant liquidated the hours worked in excess of eight at time and a half, taking as basis the average earned in the eight hours constituting the regular working period. Complainants had contracted different wage rates per hour for different hours of the day. The following wages for land workers governed in the 1948 collective agreement:

| 7:00 A.M. | to | 12 M. | $1.05 |
|-----------|----|-------|-------|
| 12:00 M. | to | 1 P.M. | 1.45 |

---

[1] Since the action was brought before the expiration of one year after the enactment of the Minimum Wage Act of 1956, the provisions of § 32 thereof do not apply. 29 L.P.R.A. § 246d (Supp. 1963).

[2] In the course of the hearing it was made clear that all the claimants in this appeal worked on the pier. None of the claimants herein performed work on the lighters which carried the sugar from the pier to the flank of the ship.

| | | | |
|---|---|---|---|
| 1:00 P.M. | to | 4 P.M. | 1.05 |
| 4:00 P.M. | to | 6 P.M. | 1.27 |
| 6:00 P.M. | to | 7 P.M. | 1.57 |
| 7:00 P.M. | to | 11 P.M. | 1.27 |
| 11:00 P.M. | to | 12 P.M. | 1.60 |
| 12:00 P.M. | to | 6 A.M. | 1.53 |
| 6:00 A.M. | to | 7 A.M. | 1.75 |

Claimants maintain that the extra hours should be liquidated at double rate, and that such double rate should be computed on the basis of the specific rates fixed in the agreements for the hours worked in excess of eight hours a day instead of double the average of the regular hours worked. Thus, for example, a worker who works during the shift from 7:00 A.M. to 12 M. ($1.05) and from 1:00 P.M. to 4:00 P.M. ($1.05), and then works three extra hours from 4:00 to 6:00 P.M. ($1.27) and from 6:00 to 7:00 P.M. ($1.57), claims payment of these additional hours at the respective double rate of $1.27 and $1.57.

1. Mandatory Decree No. 3, 29 R.&R.P.R. § 245n–21 to 35, of the Minimum Wage Board, established wages and working conditions for the laborers of the sugar industry. It provided that "no employer shall employ any worker in the agricultural phase of the sugar industry for over 8 hours in any 24-hour period unless such worker receives compensation for his work, in excess of said 8 hours, at a rate twice the minimum wage applicable."

Industrial phase was defined in the decree as follows:

"The transportation of the cane when performed by the sugar central, the weighing, the preparation and grinding of the cane, the elaboration, handling, packing, weighing and warehousing of sugar and any other operation related to the industrial phase of the manufacture of sugar from the moment the cane is weighed in the scale of the central until the sugar is removed from the warehouse of the central; *provided, that the transportation of sugar, when performed by the centrals themselves,*

*shall be considered as part of the industrial phase."* (Italics ours.)

Claimant laborers performed work in a phase of the transportation of sugar. They worked on the pier loading the lighters which carried it alongside the ship. They are clearly covered by the mandatory decree since they worked for the central, and the decree expressly provides that "the transportation of the cane, when performed by the sugar central, shall be considered as part of the industrial phase."[3]

■ Defendant alleges as defense the fact that during the greater part of the time covered by the claim, the operation performed by claimants was in charge of corporate entities other than the corporation which operated the central. Defendant admits, however, that practically all the stock in these two entities belonged to the corporation owner of the mill which processed the sugar handled by claimant laborers. In view of this reality, it is well to cite here our ruling in *South P.R. Sugar Corp.* v. *Sugar Board*, 88 P.R.R. 42 (1963), where we said that "the courts pierce the corporate veil when the intention or the purpose of the corporate structure is to evade compliance with a statute." The same doctrine applies even though that was not the original intention, if that is in fact the final result.

■ 2. Having established that complainants are entitled to be paid at double time the hours worked in excess of eight, let us consider next the method for making the computation in cases such as the present in which different wage rates have been agreed upon for different hours of the day.

■ Section 5 of Act No. 379 of 1948, 29 L.P.R.A. § 274, provides that "every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the

---

[3] *Ortiz* v. *Eastern Sugar Associates*, 85 P.R.R. 90 (1962), presents different facts since claimants worked on lighters operating between Vieques and Puerto Rico.

rate agreed upon for regular hours." The rate agreed upon herein for each regular hour was expressly fixed taking into consideration several factors, rather than on the basis of an average. They agreed on higher wages for the hours corresponding to the period normally devoted to lunch and supper, as well as to the period commencing at four in the afternoon, and even higher wages for the period commencing at midnight and ending at seven in the morning. Obviously, these incentives were established in order to induce the laborers to work during periods normally devoted to relaxation and rest. The highest compensation for these hours governs even though the hours correspond to the first of the working period. If a higher rate is paid even if they are the first hours of the working period, it is reasonable that if the laborer works during those hours after working the 8-hour period that he should be paid twice the rate stipulated for each one of these hours.

Should we accept the formula advanced by defendant, the purpose of the agreement between the employer and the laborers in stipulating higher wages for the more difficult hours for performing work would be defeated to a certain extent. If in computing the double rate we take as basis the average earnings in the first eight hours, the factor so much emphasized in the agreement would be eliminated from the computation: that during certain hours the work is more cumbersome, and, therefore, they should be compensated at a higher wage rate.

In the federal jurisdiction the Supreme Court in *Bay Ridge Co.* v. *Aaron*, 334 U.S. 446 (1948), in considering the question adopted the formula, for determining the basis for computing the extra hours, of dividing the wages earned during the working period by the number of hours actually worked. But since this is a question of local law, we are in a position to adopt the norm which may seem more reason-

able and conformable to the conditions prevailing here where unemployment is high.

On two occasions when this question was raised before the Ponce and Mayagüez Parts of the Superior Court, these courts ruled that "the compensation fixed in the agreement for each one of the different hours of the day or of the night is the regular hourly rate" for the purpose of computing the hours in excess of eight, and we refused to review that determination. *Abadía Moreno* v. *Bull Insular Line*, CS-57-1413 (Mayagüez), *cert. denied*, CE-62-2; and *Bull Insular Line* v. *Superior Court*, CS-57-2251 (Ponce), *cert. denied*, C-62-24.

If this formula is onerous to the employer, the remedy is in his hands: not to extend the working period beyond the regular eight hours. Furthermore, the purpose of the law will thus be effectuated: to guarantee an adequate rest and allocate more equitably the source of work among the laboring force.

For the reasons stated, the judgment rendered by the Superior Court, San Juan Part, on October 11, 1963, will be affirmed and the case remanded to the trial court for making the necessary computations pursuant to the terms of this opinion.